UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
ALTON THOMAS,

                          Plaintiff,

   -v-                                             1:21-CV-1358

TOWN OF LLOYD; TOWN OF LLOYD
POLICE DEPARTMENT; TOWN OF
PLATTEKILL; TOWN OF PLATTEKILL
POLICE DEPARTMENT; NEW YORK
STATE POLICE; JOHN DOES,
presently unidentified members of the
Town of Lloyd Police Department;
MICHAEL MOE #1 being presently an
unidentified member of the Town of
Plattekill Police Department,
MICHAEL MOE #2 being presently an
unidentified member of the Town of
Plattekill Police Department,
MICHAEL MOES, presently
unidentified members of the Town of
Plattekill Police Department;
NY STATE TROOPER THERESA
DILUVIO, Shield No. 2631 (retired);
PAUL POE #1, being presently an
unidentified member of the New York
State Police; PAUL POE #2, being
presently an unidentified member of the
New York State Police; and PAUL
POES, presently unidentified members
of the New York State Police,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

JEFFREY A. ROTHMAN, ATTORNEY              JEFFREY A. ROTHMAN, ESQ.
   AT LAW
Attorneys for Plaintiff
305 Broadway Suite 100
New York, New York 10007


MURPHY BURNS LLP                          THOMAS K. MURPHY, ESQ.
Attorneys for defendants Town of
   Lloyd, Town of Lloyd Police
   Department, Town of Plattekill, and
   Town of Plattekill Police Department
407 Albany Shaker Road
Loundonville, New York 12211


HON. LETITIA JAMES                        DAVID C. WHITE, ESQ.
Attorney General for the                  Assistant Attorney General
   State of New York
The Capitol
Albany, New York 12224


DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On December 20, 2021, plaintiff Alton Thomas ("Thomas" or "plaintiff")

filed a nine-count complaint in this district.  Plaintiff alleged unconstitutional

and discriminatory conduct on the part of defendants the New York State

Police, New York State Trooper Theresa Diluvio ("Diluvio"), two unidentified

New York State Troopers sued as Paul Poe #1 and Paul Poe #2 (together with

Diluvio the "Troopers"), an unspecified number of additional unidentified

New York State Troopers sued as Paul Poes, the Town of Lloyd ("Lloyd"), the Town of Plattekill ("Plattekill" and with Lloyd the "towns"), each town's Police Department (together with the towns the "municipal defendants"), and several unidentified Lloyd police officers sued as John Does and unidentified Plattekill police officers sued as Michael Moes.

In the amended complaint—the current operative pleading—Thomas alleges: (I) a deprivation of rights guaranteed by the Constitution of the United States under 42 U.S.C. § 1983 ("§ 1983"); (II) municipal § 1983 liability against the towns under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); (III) violations of Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act (the "Rehabilitation Act"); (IV) vicarious liability against the towns for alleged state law torts by their officers; (V) false arrest and false imprisonment; (VI) assault and battery; (VII) intentional and negligent infliction of emotional distress; (VIII) negligence; and (IX) trespass.

On April 5, 2022, the municipal defendants moved to dismiss the amended complaint against them under Federal Rule of Civil Procedure ("Rule") 12(b)(6). That motion, having been fully briefed, will now be decided on the submissions and without oral argument.

3

## II. **BACKGROUND**[1]

When he was twenty-four years of age, Thomas was diagnosed with bipolarism and depression.  Dkt. 11 ("Compl."), ¶ 18.  According to him, though, he has lived with these conditions since he was in grade school.  *Id.*  Plaintiff claims that his mental illnesses forced him out of high school, isolated him socially, prevented him from working full time, and make it difficult for him to interact appropriately with authority figures, including police officers.  *Id.* ¶¶ 19-23.  Beyond that, plaintiff alleges that at certain points in the past he has attempted suicide.  *Id.* ¶ 24.

In August of 2020, Thomas was treating his bipolarism and depression with the medication Seroquel.  Compl. ¶ 25.  Apparently, though, on the morning of August 27, 2020, plaintiff exceeded his prescribed dose, which triggered a "psychiatric episode."  *Id.* ¶ 26.

The same morning, and apparently while he was under the influence of his oversized dose, Thomas spoke to his sister over the phone.  Compl. ¶ 27.  Plaintiff alleges that in the course of their conversation he made a joke that caused his sister to become concerned that he might be suicidal.  *Id.*  It seems plaintiff's sister was so worried about him that she called the police to make sure he did not harm himself.  *Id.*

---

[1] The facts are taken entirely from plaintiff's complaint and read in the light most favorable to him, as is appropriate on a motion to dismiss.

Diluvio, Paul Poe #1 and Paul Poe #2 were the first to respond to Thomas's sister's call.  Compl. ¶ 29.  The Troopers arrived at plaintiff's home at around ten or eleven in the morning.  *Id.* ¶¶ 14, 29.  When he saw police in his driveway, plaintiff walked out onto his porch to investigate.  *Id.* ¶ 32.  Diluvio asked plaintiff to come over to speak with her.  *Id.* ¶ 33.  Plaintiff demurred, answering that if she could not tell him why he needed to, he would not leave his porch.  *Id.* ¶ 34.  When Diluvio did not answer him, plaintiff went back inside and closed the door behind him.  *Id.* ¶ 35.

According to Thomas, Diluvio was less than pleased.  Compl. ¶ 36.  He claims that she told "the other individuals who were present at the scene" that she intended to simply shoot plaintiff with a taser.  *Id.*

Diluvio, Poe #1, and Poe #2 then entered Thomas's home.  Compl. ¶ 41.  Once inside, the three Troopers began to rifle through plaintiff's property, including his medications.  *Id.* ¶ 42.  Plaintiff asked that the Troopers put his items down.  *Id.* ¶ 43.  The Troopers allegedly retorted by asking plaintiff about the pill containers they were holding.  *Id.* ¶ 44.  Plaintiff claims he explained that they were his daily medications and snatched a pill bottle from Diluvio's hand.  *Id.* ¶¶ 44-45.

According to Thomas, as soon as he grabbed the bottle from Diluvio, she shot her taser into his stomach, causing him to collapse to the floor.  Compl. ¶¶ 47-48.  Plaintiff alleges that he was then handcuffed "with an

excessive and punitive tightness." *Id.* ¶¶ 49-50.  Plaintiff claims that he

complained about the handcuffs, but his protests went unanswered.  *Id.* ¶ 51.

The Troopers then picked Thomas up and took him outside, where an

ambulance was waiting.  Compl. ¶¶ 52-53.  At that point, two Plattekill police

officers were also standing outside.  *Id.* ¶ 54.  Apparently, so were an

unspecified number of Lloyd police officers.  *Id.* ¶ 57.  The complaint is silent

as to when these officers arrived, or what they had been told.  But the

complaint does allege that officers from both towns "unlawfully entered

[p]laintiff's trailer" and "failed to intervene to prevent the violation of

[p]laintiff's constitutional rights."  *Id.* ¶¶ 55-57.

Thomas further alleges that his landlord was also present when plaintiff

left his house.  Compl. ¶ 59.  Plaintiff claims that both his landlord and the

EMTs that arrived with the ambulance asked the Troopers to remove

plaintiff's handcuffs.  *Id.* ¶¶ 58-59.  But according to plaintiff, the Troopers

failed to do so until he was finally placed in the ambulance.  *Id.* ¶¶ 59, 61.

Plaintiff was then taken to two different hospitals.  *Id.* ¶¶ 62-63.  Ultimately,

plaintiff was involuntarily committed in the second hospital's mental ward

for approximately two weeks.  *Id.* ¶ 63.

On December 20, 2021, Thomas filed the complaint described above to

seek redress for these claimed violations of his rights.  Dkt. 1.  On April 5,

2022, the municipal defendants moved to dismiss the complaint as to them.
Dkt. 19.  This decision now follows.

## III. <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must
contain sufficient factual matter, accepted as true, to state a claim to relief
that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
That factual matter may be drawn from "the facts alleged in the complaint,
documents attached to the complaint as exhibits, and documents
incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104, 111 (2d Cir. 2010).

Importantly, "the complaint is to be construed liberally, and all reasonable
inferences must be drawn in the plaintiff's favor." *Ginsburg v. City of Ithaca*,
839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing *Chambers v. Time Warner,
Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  If the complaint and its additional
materials—when viewed through that pro-plaintiff lens—are not enough to
raise the plaintiff's right to relief above the speculative level, the complaint
must be dismissed.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV. <u>DISCUSSION</u>

The municipal defendants argue that Thomas's claims against them
should be dismissed for three reasons: (1) plaintiff has failed to allege any
sort of personal involvement by the municipal defendants or their employees

in any of the alleged torts; (2) plaintiff has failed to meet *Monell*'s requirements; and (3) the police departments are improperly named as defendants.  In the end, the first argument, if valid, would moot the rest of plaintiff's complaint as to the municipal defendants, so the analysis starts there.

### A. <u>Section 1983 Claims</u>

To recover under § 1983, a plaintiff is obliged to establish that the state actor defendant was personally involved in depriving him of his civil rights. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  That requirement for personal involvement means, by necessary implication, that "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  Instead, a supervisor's liability must be established through the same test that applies to any other state employee.  *Id.* at 619.

In short, that means that a supervisor cannot be held liable for mere deliberate indifference to a constitutional violation by his subordinates, "unless that is the same state of mind required for the constitutional deprivation [the plaintiff] alleges." *See Tangreti*, 983 F.3d at 618 (citing *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010) (internal quotation marks omitted)).

But although a supervisor cannot be held liable under § 1983 for his supervision alone, there remain two methods of establishing derivative liability for the misconduct of another, and both are relevant to this case.

First, Thomas alleges that all defendants failed to intervene to prevent violations of his constitutional rights.  "A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (explaining standard for failure to intervene in excessive force context).  More generally, a police officer must intervene if a reasonable officer in her position would know that the victim's rights were being violated but failed to take reasonable steps to intervene despite having a reasonable opportunity to do so.  *See Ferguson v. City of N.Y.*, 2018 WL 3233131, at *7 (E.D.N.Y. July 2, 2018) (citing *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008)).

Second, a municipality can be liable for its employees' constitutional torts under certain limited circumstances.  *Monell*, 436 U.S. at 694-95.  Specifically, a municipality can be called to account for constitutional torts of its employees if—but only if—the tort was committed as a result of a municipal policy, custom, or practice.  *Id.* at 694.

There are four ways of establishing a policy or practice suitable to holding a municipality liable: (1) proving a formal policy; (2) proving that the municipality's policymaking official caused the constitutional deprivation; (3) proving a practice that is consistent and widespread enough "to have the force of law" as a tacit custom; and (4) proving a wholesale failure to provide adequate training and supervision to subordinates amounting to deliberate indifference to the rights of citizens. *Dixon v. City of Syracuse*, 493 F. Supp. 3d 30, 36-37 (N.D.N.Y. 2020).

Whichever of the four paths to municipal liability a plaintiff chooses, he must demonstrate that the policy—whether overt or covert—caused his injury. *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). In the usual case, a single incident involving actors below the policymaking level of authority will not suffice to establish municipal liability. *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998). Instead, to ascribe the actions of subordinate employees to policymakers, a plaintiff must allege a discriminatory practice which is "so manifest as to imply the constructive acquiescence of senior policy[ ]making officials." *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992).

Crucially, *Monell* only extends liability from the individual state agent to the municipality: it does not create liability from whole cloth. *See Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006). As a result, a failure to allege

a constitutional violation by a municipal employee forecloses *Monell* liability on the part of the municipality itself. *See id.* at 219-20.

The municipal defendants' principal attack against Thomas's complaint is that he does not allege any wrongdoing that can fairly be traced back to them. To their point, the only concrete allegations against any Doe or Moe defendants are that: (1) they were physically present by the time plaintiff was put in the ambulance; and (2) they "unlawfully entered" plaintiff's home at some unspecified point. Compl. ¶¶ 54-57. According to the municipal defendants, because those facially meager allegations against the Doe and Moe defendants are not enough to establish liability against them, then by necessity plaintiff's *Monell* claims against the municipal defendants themselves must also fail. *Segal*, 459 F.3d at 219-20.

To that end, Thomas alleges six forms of direct § 1983 claim: (1) false arrest/imprisonment;[2] (2) excessive force; (3) unreasonable search;[3] (4) retaliation; (5) due process violations; and (6) equal protection violations. But for each of those claims, plaintiff also alleges that the municipal

---

[2] False arrest and false imprisonment claims look and function identically. *See Johnston v. City of Syracuse*, 2021 WL 3930703, at *5 (N.D.N.Y. Sept. 2, 2021) (dismissing false imprisonment claims as duplicative of false arrest claim relying on same factual predicate). For consistency's sake, the Court will style plaintiff's false imprisonment claim as a false arrest claim.

[3] The complaint actually labels this § 1983 variant a "trespass." Compl. ¶ 68. But trespass is a state law tort, not a constitutional one. *See, e.g., Wierzbic v. Howard*, 836 F. App'x 31, 33-36 (2d Cir. 2020) (summary order) (considering claim for trespass under state common law while considering false arrest claims under § 1983).

defendants are liable for the Doe and Moe defendants' failure to intervene to prevent harms caused by the other officers.

### 1. <u>False Arrest</u>

First, under either § 1983 or New York law, a plaintiff claiming false arrest must show: "(1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Barnes v. City of N.Y.*, 2021 WL 260092, at *3 (E.D.N.Y. Jan. 26, 2021) (internal quotation marks omitted) (citing *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975)).

Thomas's complaint cannot establish that any of the municipal employees intended to confine him when the only thing that he claims against any Doe or Moe is his or her mere presence on August 27, 2020.  Compl. ¶¶ 54-57.

Neither can Thomas establish a failure to intervene on any Doe or Moe's part.  To begin, he does not even clearly describe when the Doe and Moe defendants arrived, but the earliest mention of any non-Trooper defendant comes when plaintiff was led out of his home in handcuffs.  *See* Compl. ¶¶ 54-57.  At the least, the complaint makes no mention of any defendants other than Diluvio and the two Poe defendants entering plaintiff's home while he was inside.  *See id.* ¶¶ 29-49 (describing Troopers as first on scene and relaying account of Troopers tasing and handcuffing plaintiff).

12

What is more, Thomas at no point alleges that any Doe or Moe defendant so much as spoke to any of the Troopers. *See generally* Compl. *passim*. The closest he comes is alleging that Diluvio said "to the other individuals who were present" that she intended to tase plaintiff. *Id.* ¶ 36. But nowhere does he allege that any Doe or Moe was one of those "individuals who were present." Put together, the full extent of the complaint's allegations against the Doe and Moe defendants are that they arrived on the scene of a reported suicide risk and saw the Troopers leading plaintiff out in handcuffs. Compl. ¶¶ 27, 54-57.

In that context, and even taking the facts in the complaint and reading them in the light most favorable to Thomas, he has not plausibly alleged that a reasonable person in the Doe and Moe defendants' shoes would have perceived that other police officers leading plaintiff out in handcuffs was unreasonable. *See Ferguson*, 2018 WL 3233131, at *7. Accordingly, to the extent plaintiff raises a claim against the municipal defendants hinging on the Doe and Moe defendants' participation in his allegedly false arrest, that claim must be dismissed. *See, e.g.*, *Gondola v. City of N.Y.*, 2019 WL 13106597, at *9 n.7 (E.D.N.Y. May 6, 2019) (dismissing failure to intervene claim on false arrest when there would have at least been uncertainty on intervening officers' part as to whether constitutional violation had occurred).

## 2. **Excessive Force**

Second, a plaintiff looking to establish an excessive force claim during an arrest or investigatory stop must establish that a police officer used more force against him than was reasonable under the circumstances. *See Cugini v. City of N.Y.*, 941 F.3d 604, 612 (2d Cir. 2019) (noting that arrest or investigatory stop carries with it right to some use of force, but that use of force must be reasonable based on "careful balancing" of degree of intrusion and governmental interests). Thomas has not alleged that any Doe or Moe defendant used any force against him at all, so his only hope is to establish a failure to intervene. *See generally* Compl. ¶¶ 54-57 (plaintiff's only factual allegations against Doe and Moe defendants including no use of force).

Once again, he cannot. As discussed above, there are no allegations that the Doe or Moe defendants were even at Thomas's home until after the alleged tasing took place. Accordingly, plaintiff has failed to plausibly allege a reasonable opportunity to intervene in any harm alleged against the Troopers up until after Diluvio tased plaintiff.

That leaves only one potential excessive force claim for Thomas to allege against the Doe and Moe defendants. Specifically, plaintiff alleges that the handcuffs the Troopers placed on him were unreasonably tight. To his point, handcuffing a plaintiff tightly enough to cause injury may constitute excessive force under the Fourth Amendment. *Cugini*, 941 F.3d at 612. In

determining whether handcuffing rises to the level of a Fourth Amendment violation, courts weigh three factors: (1) whether the handcuffs were unreasonably tight; (2) whether the defendants ignored the arrestee's complaints about his handcuffs; and (3) the degree of injury to the arrestee's wrists. *Id.*

Thomas alleges that he, the EMTs, and his landlord all complained to the Troopers about his handcuffs being too tight. Compl. ¶¶ 51, 58-59. But as is quickly becoming a pattern in this case, the complaint very specifically limits the audience for those complaints to the Troopers. *Id.* (specifically alleging that *Troopers* were warned by plaintiff, EMTs, and landlord that handcuffs were too tight). There are simply no allegations that the Doe or Moe defendants had any idea that the handcuffs placed on plaintiff were tight enough to cause harm. Plaintiff's excessive force claim therefore fails. *Cf., e.g., Dinkins v. New York*, 2021 WL 3173968, at *9 (S.D.N.Y. July 26, 2021) (granting summary judgment against excessive force claim when defendants in question did not know handcuffs were too tight or causing injuries).

### 3. **Unreasonable Search and Seizure**

Third, the Fourth Amendment "does not proscribe all searches and seizures, but only those that are unreasonable." *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 619 (1989). In the usual case, a warrantless search—especially of a home—is "presumptively unreasonable." *Harris v. O'Hare*,

770 F.3d 224, 231 (2d Cir. 2014).  However, police officers with probable cause can, in exigent circumstances, nevertheless lawfully enter a home and/or search property so long as they have probable cause to do so.  *Id.*

Normally, determining whether exigent circumstances existed to justify a warrantless entry of a home would be a fact-intensive inquiry far better suited to summary judgment or trial than a motion to dismiss.  *See, e.g.*, *Alexander v. City of Syracuse*, --- F. Supp. 3d ----, 2021 WL 5628726, at *12-13 (N.D.N.Y. Dec. 1, 2021) (delving extensively into factual record to consider whether exigent circumstances existed).  Certainly as far as the Troopers are concerned, there can be no doubt that a Rule 12(b)(6) motion trying to address whether exigent circumstances existed would have had a steep hill to climb.

However, the allegations against the Doe and Moe defendants—and by necessary extension the municipal defendants—are so purely speculative that they cannot survive.  *Twombly*, 550 U.S. at 555.  Take the complaint's allegations step by step.  Thomas claims that the Troopers arrived first on the scene.  Compl. ¶¶ 14, 29.  He claims that he spoke to them outside, then went inside his home, where they followed him.  *Id.* ¶¶ 32-41.  Once inside, plaintiff explains that the Troopers rifled through his belongings.  *Id.* ¶ 42.  But there are no allegations of any Doe or Moe defendants being present inside his home while plaintiff was there.

16

After that, Thomas had his altercation with Diluvio, was tased, handcuffed, and taken to the ambulance.  Compl. ¶¶ 46-53.  En route, plaintiff acknowledges for the first time that the Does and Moes were present outside his home.  *Id.* ¶¶ 54-57.  Once plaintiff left in the ambulance, he alleges that he was committed for two weeks without returning home in between.  *Id.* ¶¶ 62-63.

From that modest handful of concrete allegations, Thomas expects his claim that the Does and Moes unlawfully entered his property to rise to the level of plausibility needed to withstand the municipal defendants' Rule 12(b)(6) motion.  Compl. ¶¶ 54-57.  It cannot.  Nowhere in the complaint does plaintiff explain *when* these defendants entered his home.  More damning still, he also never explains how he could have known if they had.  If they entered his home while he was there with Diluvio and the other Troopers, plaintiff could have included allegations that he saw them.  As a counseled litigant, he should have.  But he did not.

And if the Does and Moes entered Thomas's home after he was taken to the ambulance, he could have explained how that information came to his attention when he left in an ambulance for two weeks immediately afterward.  Compl. ¶¶ 62-63.  One could, perhaps, envision that the Does or Moes somehow left his home in a state that betrayed their presence.  Or

perhaps plaintiff's landlord, who was apparently present for much of the events of August 27, could have seen them entering it and told him. *Id.* ¶ 59.

But once again, it is on Thomas to allege facts to make his complaint plausible. *See Chernish v. Mass. Mut. Life Ins. Co.*, 2009 WL 385418, at *2 (N.D.N.Y. Feb. 10, 2009) (noting that "the factual allegations must be enough to raise a right to relief above the speculative level to a plausible level, assuming (of course) that all the allegations in the complaint are true"). In the absence of concrete facts, plaintiff's failure to explain how he could have known that any police officer answerable to the municipal defendants entered his home means that his complaint falls short of even that modest mark. *Cf. Chen v. Cai*, 2022 WL 917575, at *6-7 (S.D.N.Y. Mar. 28, 2022) (dismissing claim because complaint lacked "the requisite facts" and instead relied on "conclusory and speculative" allegations).

Moreover, for the same reasons discussed above, Thomas's failure to allege that the Doe and Moe defendants were even present when the Troopers entered his house precludes any possibility that they had an opportunity to intervene in the Troopers' entry. *See Figueroa*, 825 F.3d at 106 (holding that officer must have reasonable opportunity to intervene to be held liable under failure to intervene theory). Accordingly, plaintiff's unreasonable search claim against the municipal defendants must be dismissed for failure to state an underlying violation for which any of their officers could be liable. *See,*

*e.g.*, *Corso v. City of N.Y.*, 2018 WL 4538899, at \*12 (S.D.N.Y. Sept. 20, 2018) (dismissing failure to intervene claim supported only by conclusory allegations of awareness of violation and failure to intervene which the concrete facts pled in complaint seem to contradict).

### 4. <u>First Amendment Retaliation</u>

Fourth, a private citizen (as opposed to a public employee) alleging retaliation under the First Amendment must prove: (1) that he had an interest protected by that Amendment; (2) the "defendants' actions were motivated or substantially caused by his exercise of that right"; and (3) defendants' actions effectively chilled his exercising his rights. *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). Of course, the bedrock of a First Amendment retaliation claim is protected speech. *Williams*, 535 F.3d at 76.

Yet again, though, the complaint fails to allege that any of the municipal defendants' employees so much as spoke to Thomas. *See* Compl. ¶¶ 54-57. Nor even has he alleged that anyone else talked to the Doe or Moe defendants so that knowledge of any speech on his part could be fairly attributed to them. Plaintiff has thus failed to allege a retaliation claim against the Doe and Moe defendants as well, either directly or through a failure to intervene. By extension the municipal defendants cannot be held liable under *Monell*. *Segal*, 459 F.3d at 219-20.

**5. <u>Due Process</u>**

Fifth, a procedural due process claim requires a plaintiff to prove that he was deprived of either property or a liberty interest without due process of law. *See J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) (requiring proof of loss of property to establish procedural due process claim); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (allowing due process claim for deprivation of liberty interest). By contrast, a plaintiff asserting a substantive due process claim must establish a deprivation of a constitutional right that is "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021).

Though the refrain has doubtless become familiar by now, it must be repeated that Thomas has failed to explain how the Doe and Moe defendants' being present at his home at some unspecified point in time amounted to a deprivation at all, let alone an egregious deprivation of his rights. *Hurd*, 984 F.3d at 1087. And as was discussed above, he also has not alleged any opportunity for the Doe or Moe defendants to have communicated with the Troopers to learn of a constitutional violation triggering their duty to intervene. *See Figueroa*, 825 F.3d at 106. Plaintiff's due process claim against the municipal defendants likewise fails.

## 6. <u>Equal Protection</u>

Sixth, to raise a selective enforcement claim under the equal protection clause, a plaintiff must allege that: (1) he was treated selectively; and (2) the selective treatment was owed to "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004). But for a final time, the Doe and Moe defendants' mere presence outside of Thomas's home does not amount to selective treatment. Compl. ¶¶ 54-57. And he still has yet to explain any opportunity for any animus on the Trooper's part to be made apparent to the Doe and Moe defendants. In short, plaintiff's equal protection claim is also defective as against the municipal defendants.

All together, even reading the complaint in the light most favorable to Thomas, he has alleged no concrete facts to support unconstitutional conduct by the Doe and Moe defendants. Instead, his claims rely on a healthy helping of speculation. That cannot pass muster, even at the Rule 12(b)(6) stage. *See Twombly*, 550 U.S. at 555 (ruling that complaint must rise above level of speculation to survive motion to dismiss). Because plaintiff has not plausibly alleged a claim against any police officer employed by the municipal defendants, his claims against the municipal defendants themselves are similarly defective. *Segal*, 459 F.3d at 219-20. Plaintiff's § 1983 and *Monell*

claims under Counts One and Two of the amended complaint must be dismissed as to the municipal defendants.

### B. State Law Claims

Next, Thomas would hold the municipal defendants accountable for torts he claims their employees committed under New York law.  According to eh law of that state, an employer may be held vicariously liable "for the tortious acts of an employee committed within the scope of his employment" under the doctrine of respondeat superior.  *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 416 (S.D.N.Y. 2015).  That principle opens municipalities to liability for the actions of police officers in their employ. *Triolo v. Nassau Cnty.*, 24 F.4th 98, 110-11 (2d Cir. 2022).

Functionally, that means that a plaintiff must prove both that the conduct that led to his injury was "undertaken within the scope of the employee's duties to the employer" and that it was "in furtherance of the employer's interests."  *De Sole*, 137 F. Supp. 3d at 416.  Critically, though, where there is no underlying violation, there can be no vicarious liability.  *Triolo*, 24 F.4th at 113.

Thomas pleads five claims under New York state law: (1) false arrest; (2) assault and battery; (3) intentional and negligent infliction of emotional distress; (4) negligence; and (5) trespass.  He would hold the municipal defendants liable for each under respondeat superior.

Turning first to Thomas's false arrest claim, "[a] § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). As a result, this claim is fatally flawed as against the municipal defendants for the same reasons that his § 1983 claim was. Plaintiff's Count V false arrest claim must be dismissed against the municipal defendants.

Second, Thomas's assault and battery claims under state law are considered under the same standard as his claims of excessive force under § 1983.[4] *Woods v. Szakacs*, 2017 WL 11567918, at *1 (N.D.N.Y. May 25, 2017). Naturally, his Count VI assault and battery claims must also be dismissed as against the municipal defendants for the same reason. *Id.*

Third, to state a claim for negligent infliction of emotional distress under New York law, a plaintiff must demonstrate: (1) "extreme and outrageous conduct"; (2) which caused plaintiff injury; (3) in the form of "severe emotional distress." *Green v. City of Mt. Vernon*, 96 F. Supp. 3d 263, 297

---

[4] New York's assault and battery standard may be more lax than the federal one, because some mid-level appellate courts have held that, in the event of an unlawful arrest, any physical contact by police officers amounts to an assault and battery. *See Johnson v. Suffolk Cnty. Police Dep't*, 665 N.Y.S.2d 440, 440-41 (Sup. Ct. App. Div. 2d Dep't 1997). Because plaintiff never alleges that any Doe or Moe defendant even touched him, though, that distinction is irrelevant. *See* Compl. ¶¶ 54-57.

(S.D.N.Y. 2015).  Intentional infliction of emotional distress can be proven by the same elements, with the additional requirement of proving that the defendant intended to cause severe emotional distress to the plaintiff.  *Id.* at 298.  Both claims require that the defendant's conduct be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Id.*

Thomas's allegations that the Doe and Moe defendants were present during his arrest and failed to stop the Troopers from their misconduct cannot come close to the requisite standard of outrageousness and extremity expected of him.  *Cf., e.g.*, *Green*, 96 F. Supp. 3d at 298 (finding that strip search of plaintiff without threat of harm cannot establish outrageous conduct).  In any case, "public policy bars claims sounding in intentional infliction of emotional distress against a governmental entity," and thus New York law prohibits those claims as against the municipal defendants.  *D'Angelo-Fenton v. Town of Carmel*, 470 F. Supp. 2d 387, 399 (S.D.N.Y. 2007).  Plaintiff has failed to state a claim for intentional or negligent infliction of emotional distress against the municipal defendants, so Count VII must also be dismissed.

Fourth, as far as negligence is concerned, New York law does not "recognize a claim for negligence arising out of an arrest or prosecution."

*Dollard v. City of N.Y.*, 408 F. Supp. 3d 231, 238 (E.D.N.Y. 2019).  Instead, if police officers are not acting as reasonable officers should, the proper mechanism for recovery is through the family of intentional torts designed to redress those wrongs, such as false arrest/imprisonment, assault and battery, or § 1983 claims.  *See Rizk v. City of N.Y.*, 462 F. Supp. 3d 203, 229 (E.D.N.Y. 2020) (noting that claims defendants were not acting as reasonable officers should must sound in excessive force or unreasonable search).  Thomas does not allege any misconduct on any Doe or Moe defendant's part other than their—remote—involvement with his arrest.  *See* Compl. ¶¶ 54-57.  By extension, plaintiff's Count VIII negligence claim against the municipal defendants must be dismissed.

Fifth, Thomas alleges trespass.  To that end, a person commits a trespass under New York law if he "intru[des] upon the property of another without permission."  *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 93 (W.D.N.Y. 2009).  Alternatively, "a refusal to leave after permission has been granted but thereafter withdrawn" also amounts to trespass.  *Volunteer Fire Ass'n of Tappan, Inc. v. Cnty. of Rockland*, 956 N.Y.S.2d 102, 105 (Sup. Ct. App. Div. 2d Dep't 2012).  Predictably, though, "law-enforcement officials have a privilege to enter private property to perform their legal duties."  *Frederique v. Cnty. of Nassau*, 168 F. Supp. 3d 455, 489 (E.D.N.Y. 2016).

As was discussed above, though, Thomas has failed to plausibly allege that the Doe and Moe defendants entered his property without authority to do so.  The only fact in the complaint which suggests their knowledge as to the attendant circumstances on August 27, 2020 is that plaintiff alleges that his sister alerted law enforcement that he was a suicide risk. Compl. ¶¶ 27-28.  Plaintiff can only speculate about any knowledge the Doe and Moe defendants might have had about a disproportionate response to that information on the Troopers' part.

In fact, that amounts to a second level of speculation once the speculative nature of Thomas's allegations that the Doe and Moe defendants entered his property in the first place is taken into account.  In other words, plaintiff has failed to plausibly allege that any Doe or Moe defendant trespassed in his home.  Because the municipal defendants themselves obviously lacked the capacity to intrude upon his property, the lack of an underlying tort forecloses any possibility of vicarious liability on the municipal defendants' part.  *See Triolo*, 24 F.4th at 113 (noting that vicarious liability cannot apply if no underlying tort was alleged).  Plaintiff's Count IX trespass claim against the municipal defendants must be dismissed.

### C. ADA and Rehabilitation Act Claims

To state a claim of disability discrimination under Title II of the ADA, a plaintiff must plausibly allege three elements: (1) plaintiff is a qualified

individual with a disability; (2) defendants are subject to the ADA; and

(3) plaintiff was "denied the opportunity to participate in or benefit from

defendants' services, programs, or activities, or were otherwise discriminated

against by defendants, by reason of plaintiff['s] disabilit[y]." *Noel v. N.Y.C.*

*Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012).

Essentially the same standard governs claims under the Rehabilitation

Act, although there are slight differences between the two statutes that do

not come into play in this case. *Piligian v. Icahn Sch. of Med.*,

490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020); *see Henrietta D. v. Bloomberg*,

331 F.3d 261, 272 (2d Cir. 2003) (noting that there are subtle distinctions

between ADA and Rehabilitation Act).

Among others, state or local governments are subject to Title II of the

ADA, as are any of their departments, agencies, or other instrumentalities.

*Bobbit v. Marzan*, 2020 WL 5633000, at *13 (S.D.N.Y. Sept. 21, 2020).

Similarly, any entity receiving federal financial assistance is subject to the

Rehabilitation Act. *Id.*

As a result of the limited definitions of what sorts of defendants are

"subject to" Title II of the ADA and Rehabilitation Act, courts have

"repeatedly held" that there is no individual liability under either statute.

*See Yates v. Fisher*, 2010 WL 457106, at *4 (N.D.N.Y. Feb. 4, 2010) (collecting

cases).  But municipal entities may nevertheless be held vicariously liable for

violations of Title II of the ADA and the Rehabilitation Act committed by their agents. *Morales v. City of N.Y.*, 2016 WL 4718189, at *7 (S.D.N.Y. Sept. 7, 2016).

An interaction between a law enforcement officer and a disabled person qualifies as a service, program, or activity subject to accommodation under— and protected from discrimination by—the ADA and Rehabilitation act. *See Williams v. City of N.Y.*, 121 F. Supp. 3d 354, 365 & n.14 (S.D.N.Y. 2015) (collecting cases). However, the reasonableness of police conduct "must be assessed in light of the totality of the circumstances of the particular case." *Id.* at 365.

As a consequence, courts have found two fact patterns during the course of an arrest that can commonly raise a legitimate possibility of discrimination in violation of Title II or the Rehabilitation Act. *See Durr v. Slator*, 558 F. Supp. 3d 1, 27 (N.D.N.Y. 2021). The first is when police wrongfully arrest a plaintiff because they misinterpret his disability to be criminal activity. *Id.* at 27-28. The second is when police fail to reasonably accommodate a disability during an investigation or arrest. *Id.* at 28.

Thomas has failed to plausibly allege that the municipal defendants engaged in either common variant of police ADA discrimination. As was laboriously discussed above, any potential improprieties relating to plaintiff's arrest are attributable only to the Troopers. Based on the scant allegations

against the Doe and Moe defendants, there is no cause to extend the malfeasance plaintiff alleges to the municipal defendants as well.

Neither has Thomas made any mention of an accommodation that he needed but that any Doe or Moe defendant denied him.  Similarly, plaintiff has not suggested any other form of disability discrimination that can fairly be attributed to an employee of either town.  By extension, the municipal defendants cannot be held vicariously liable if there is no anchoring misconduct on the part of their employees.  *See Morales*, 2016 WL 4718189, at *7 (noting that vicarious liability applies to municipal defendants).  Plaintiff's ADA and Rehabilitation Act claims must therefore be dismissed as to the municipal defendants.[5]  With that, no claims remain against the municipal defendants, and they must be dismissed from this case altogether.

## V. <u>CONCLUSION</u>

Thomas's complaint alleges a broad range of misconduct against an even broader range of defendants.  The core of that complaint—his claims against

---

[5] Plaintiff objects that the municipal defendants failed to argue that his ADA and Rehabilitation Act claims against them should be dismissed.  That is not entirely true.  The municipal defendants included those claims in their arguments relying on plaintiff's failure to allege personal involvement.  Even if the municipal defendants' arguments about the Doe and Moe's personal involvement do not map perfectly onto the ADA or Rehabilitation Act, the fact remains that the municipal defendants pointed to a lack of culpable conduct in their moving papers as fatal to plaintiff's claims under both statutes.  Plaintiff therefore had an opportunity to respond to that point yet failed to meaningfully do so.  Plaintiff's ADA and Rehabilitation Act claims are subject to dismissal.  *See Alki Partners, L.P. v. Vatas Holding GMHB*, 769 F. Supp. 2d 478, 499 (S.D.N.Y. 2011) (noting that dismissal of claims under Rule 12(b)(6) rubric is permissible even in absence of motion so long as plaintiff was given opportunity to respond and dismissing complaint as to non-moving defendant).  For the same reasons, the Doe and Moe defendants must be dismissed as well, even though they have yet to appear.  *See id.*

Diluvio and the Troopers—remains every bit as vital today as it was before this decision. All that changes going forward is that plaintiff's ancillary claims against the municipal defendants, who by all appearances and all allegations in plaintiff's complaint were mere bystanders, have been pruned off to allow plaintiff's more central claims to move forward more effectively.

If, in the course of discovery, it should turn out that the municipal defendants or their employees mistreated Thomas at any point, he is free to seek leave to amend his complaint and reintroduce those claims against them. For now, though, there is no point in allowing those threadbare allegations to linger.

Therefore, it is

ORDERED that

1. Defendants Town of Lloyd, Town of Lloyd Police Department, Town of Plattekill, and Town of Plattekill Police Department's motion to dismiss is GRANTED; and

2. Defendants Town of Lloyd, Town of Lloyd Police Department, Town of Plattekill, Town of Plattekill Police Department, Michael Moe #1, Michael Moe #2, the remaining Michael Moes, and the John Does are DISMISSED from this case.

IT IS SO ORDERED.

Dated:  May 31, 2022
        Utica, New York.

David N. Hurd
U.S. District Judge