UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALTON THOMAS,

                       Plaintiff,

                -v-                    1:21-CV-1358

TOWN OF LLOYD; TOWN OF LLOYD
POLICE DEPARTMENT; TOWN OF
LLOYD FORMER POLICE OFFICER
MICHAEL HENRY; JOHN
DOES, presently unidentified members
of the Town of Lloyd Police Department;
TOWN OF PLATTEKILL; TOWN OF
PLATTEKILL POLICE DEPARTMENT;
TOWN OF PLATTEKILL FORMER
POLICE OFFICER ARKEEM GORHAM;
MICHAEL MOE #1 being presently an
unidentified member of the Town of
Plattekill Police Department,
MICHAEL MOE #2 being presently an
unidentified member of the Town of
Plattekill Police Department,
MICHAEL MOES, presently
unidentified members of the Town of
Plattekill Police Department;
NEW YORK STATE POLICE;
NY STATE TROOPER THERESA
DILUVIO, Shield No. 2631 (retired);
PAUL POE #1, being presently an
unidentified member of the New York
State Police; PAUL POE #2, being
presently an unidentified member of the
New York State Police; and PAUL
POES, presently unidentified members
of the New York State Police,

                     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

JEFFREY A. ROTHMAN,                    JEFFREY A. ROTHMAN, ESQ.
   ATTORNEY AT LAW
Attorney for Plaintiff
305 Broadway Suite 100
New York, NY 10007

MURPHY BURNS LLP                       THOMAS K. MURPHY, ESQ.
Attorneys for Municipal Defendants
407 Albany Shaker Road
Loundonville, NY 12211

HON. LETITIA JAMES                     DAVID C. WHITE, ESQ.
New York State Attorney General        Ass't Attorney General
Attorneys for State Defendants
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

On December 20, 2021, plaintiff Alton Thomas ("Thomas" or "plaintiff")

filed this civil action against defendants Town of Lloyd, Town of Lloyd Police

Department, an unspecified number of unidentified Town of Lloyd Police

Department officers referred to as John Does, Town of Plattekill, Michael

Moe #1, Michael Moe #2 an unspecified number of unidentified Town of

Plattekill Police Department officers referred to as Michael Moes, New York

State Police, NY State Trooper Theresa Diluvio ("Trooper Diluvio"), NY State

Police Sergeant Courtney J. Nielson ("Sergeant Nielson"), Paul Poe #1, Paul

Poe #2, and an unspecified number of unidentified New York State Police

officers referred to as Paul Poes for violations of his civil rights that occurred

during an altercation in his home during a welfare check.  Dkt. No. 1.

Thomas filed an amended complaint as of right on March 1, 2022.  Dkt.

No. 11.  Thereafter, defendants New York State Police, Trooper Diluvio, and

Sergeant Nielson (collectively, the "State Defendants") answered plaintiff's

amended complaint.  Dkt. No. 16.

On April 5, 2022, the Town of Lloyd, Town of Lloyd Police Department, the

Town of Plattekill, and Town of Plattekill Police Department moved to

dismiss plaintiff's amended complaint under the Federal Rules of Civil

Procedure ("Rule") Rule 12(b)(6) for failure to state any plausible claims for

relief against them.  Dkt. No. 19.  That motion was granted on May 31, 2022.

Dkt. No. 26.

On May 31, 2023, after conducting some discovery, Thomas filed a second

amended complaint—now the operative pleading.  Dkt. No. 43.  This pleading

reasserts plaintiff's claims against the State defendants, who have since filed

an answer, and names additional defendants Town of Lloyd Former Police

Officer Michael Henry ("Officer Henry") and Town of Plattekill Police Former

Officer Arkeem Gorham ("Officer Gorham").  Dkt. Nos. 43, 56.

Thomas's second amended complaint alleges nine federal claims arising under 42 U.S.C. § 1983, *Monell v. Department of Social Services*, 436 U.S. 658 (1978), Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act (the "Rehabilitation Act").  Dkt. No. 43. Plaintiff's second amended complaint also alleges four related claims under state law.  *Id.*

On July 12, 2023, defendants the Town of Lloyd, Town of Lloyd Police Department, Officer Henry, the Town of Plattekill, Town of Plattekill Police Department, and Officer Gorham (collectively, the "Municipal Defendants") moved under Rule 12(b)(6) to dismiss plaintiff's second amended complaint.[1] Dkt. No. 55.

The motion has been fully briefed and will be considered on the basis of the submissions and without oral argument.  Dkt. Nos. 59–61.

## II. **BACKGROUND**

Thomas's claims arise out an altercation with state and local police that occurred during a welfare check at his home.  Second Am. Compl. ("SAC") ¶¶ 14, 27–28.

At age twenty-four, Thomas was diagnosed with bipolar disorder and depression.  SAC ¶ 18.  The symptoms of plaintiff's bipolar disorder and

---

[1] New York State Police, Trooper Diluvio, and Sergeant Nielson answered the second amended complaint on July 24, 2023.  Dkt. No. 56.

depression have an enormous impact on his daily life and generally cause him to feel withdrawn, edgy, and frightened. *Id.* ¶¶ 19, 21. In addition to limiting his ability to obtain an education and learn a trade, plaintiff's symptoms cause him great difficulty communicating with others. *Id.* ¶ 21. In the past, these symptoms have even caused plaintiff to attempt suicide. *Id.* ¶ 24.

To abate these symptoms, Thomas takes an anti-psychotic, calming medication known as Seroquel. SAC ¶ 25. By August 27, 2020, plaintiff was taking Seroquel four times per day for his symptoms. *Id.* ¶ 25. On the morning of the 27th, however, plaintiff took an "excessive amount" of his medication, which triggered a psychiatric episode. *Id.* ¶ 26. During this episode, plaintiff spoke with his sister on the phone and made a joke that made her worry that he was suicidal again. *Id.* ¶ 27. Out of concern for his well-being, plaintiff's sister called the police and asked them to conduct a welfare check. *Id.* ¶ 27.

State and local law enforcement units were dispatched to Thomas's home. *See* SAC ¶ 27. The New York State Police were the first to arrive. *Id.* ¶ 29. At some point after, officers from the Town of Plattekill Police Department and the Town of Lloyd Police Department also arrived at plaintiff's home. *Id.* ¶¶ 54, 78.

From his porch, Thomas saw three New York State Troopers emerge from two squad cars: Trooper Diluvio, Trooper Nielson, and an unidentified Trooper (collectively, the "Troopers").[2]  SAC ¶¶ 29, 32.  After arriving, Trooper Diluvio asked plaintiff to come down and speak with her near the squad cars parked in his driveway.  *Id.* ¶ 33.  Plaintiff informed Trooper Diluvio that he would not speak with her unless she could tell him what he had done wrong.  *Id.* ¶ 34.  When Trooper Diluvio did not explain why she wanted to speak with plaintiff, plaintiff retreated inside his home and closed the door.  *Id.* ¶ 35.

According to Thomas, his refusal made Trooper Diluvio very angry, and she told the other individuals at the scene that she would "just tase [p]laintiff."  SAC ¶ 36.  Following this remark, the Troopers, followed by Officer Henry, entered plaintiff's home without his consent.  *Id.* ¶¶ 41, 82.

Once inside Thomas's home, the Troopers began to search through his medications and other property.  SAC ¶ 42.  The Troopers told plaintiff that they wanted to get him checked out and asked him what medications he had taken that day.  *Id.* ¶ 103.  Plaintiff told the Troopers to put down his property.  *Id.* ¶ 43.  However, the Troopers ignored plaintiff's request and

---

[2]  According to Thomas, either Paul Poe #1 or Paul Poe #2 was Trooper Neilson.  SAC ¶ 30.

continued to ask him about various pill bottles.  *Id.* ¶ 44.  Plaintiff told the Troopers that they were his daily medications.  *Id.*

The critical moment of this interaction was when Trooper Diluvio would not put down one of the pill bottles, Thomas took it from her hand.  SAC ¶ 45. Without a word, Trooper Diluvio tasered plaintiff in the stomach, which caused him to fall to the floor.[3]  *Id.* ¶¶ 47–48.

After hearing the Taser discharge, Officer Gorham and other officers entered Thomas's home to provide backup.  SAC ¶ X–71, 74, 78.[4]  Officer Gorham began to aid the Troopers by holding plaintiff's legs while the Troopers rear-handcuffed him.  *Id.* ¶¶ 72–73.

The Troopers fastened the handcuffs around Thomas's wrists with "an excessive and punitive tightness[.]"  SAC ¶ 50.  Plaintiff repeatedly told the Troopers that the handcuffs were too tight and asked for them to be loosened. *Id.* ¶ 51.  Plaintiff also complained that the Taser barbs imbedded in his

---

[3] Thomas's second amended complaint contains inconsistent and/or contradictory allegations supported by the deposition testimony of Officer Gorham and Officer Henry.  For now, these allegations are construed as alternative pleadings consistent with Rule 8.  *Compare* SAC ¶¶ 41–47, *with* SAC ¶¶ 87–91; *see Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999) (citing *MacFarlane v. Grasso*, 696 F.2d 217, 224–25 (2d Cir. 1982) ("Although these allegations were not specifically pleaded as 'in the alternative,' we have ruled that Rule 8(e)(2) offers sufficient latitude to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party as we must do in reviewing orders granting motions to dismiss or for summary judgment."); *see also Ajinomoto Co. v. CJ CheilJedang Corp.*, 2021 WL 4430200, at *3–4 (S.D.N.Y. Sept. 27, 2021) (construing inconsistent factual allegations as alternative theories at the motion to dismiss stage).

[4] Thomas's second amended complaint labels the paragraph between ¶¶ 67 and 68 as ¶ "X."  *See* SAC ¶¶ 67–68; *see also* Pl.'s Opp'n at 2 n.2 ("Due to an oversight, the paragraph between ¶¶ 67 and 68 is denoted as ¶ X.").

abdomen were causing him pain.  *Id.* ¶ 97.  Once restrained, plaintiff was taken outside where an ambulance and other law enforcement were waiting. *Id.* ¶¶ 52–53.

According to Thomas, both the emergency medical technicians ("EMTs") on the scene and his landlord asked the Troopers to remove plaintiff's "excessively tight" handcuffs.  SAC ¶¶ 101–02.  The Troopers refused these requests.  *Id.*  It was not until plaintiff was placed inside of the ambulance that his handcuffs were eventually removed.  *Id.* ¶ 104.  Plaintiff was then transported to a hospital, where he was committed to a psychiatric facility for two weeks.  *Id.* ¶¶ 105–06.

The tight handcuffs caused Thomas to develop a lump on his wrist that remains present to this day.  SAC ¶ 109.  Plaintiff also suffered two wounds on his stomach from the taser barbs.  *Id.* ¶ 114.

## III.  <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  So, while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV.  DISCUSSION

Thomas's second amended complaint asserts twelve claims against the Municipal Defendants. Plaintiff alleges § 1983 claims for false arrest, excessive force, unreasonable search, retaliation, and violations of his due process and equal protection rights. Plaintiff also alleges a § 1983 *Monell* claim for municipal liability against the Towns. In addition to plaintiff's federal causes of action, he brings state-law tort claims for false arrest, false imprisonment, assault, battery, and trespass.

The Municipal Defendants have moved to dismiss all of these claims against them. In their view, (1) plaintiff fails to allege the requisite "personal involvement" of the individual Municipal Defendants in any of the alleged constitutional deprivations; (2) plaintiff fails to plausibly allege municipal liability under *Monell*; (3) plaintiff fails to state a claim under the ADA or the

Rehabilitation Act; and (4) plaintiff's state-law claims are barred by the applicable statute of limitations.  *See* Defs.' Mem., Dkt. No. 52-2.[5]

## A. **Proper Parties**

As an initial matter, the Municipal Defendants argue that the Town of Lloyd Police Department ("LPD") and the Town of Plattekill Police Department ("PPD") must be dismissed from this action because they lack the capacity to be sued in federal court.  Defs.' Mem. at 2–3

Upon review, defendants are correct.  Rule 17 governs the capacity of an individual or entity to sue or be sued in federal court.  FED. R. CIV. P. 17(b). As relevant here, Rule 17(b) requires that an entity have an independent legal existence.  *See Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 382–83 (2d Cir. 2021) (citing *Brown v. Fifth Jud. Dist. Drug Task Force*, 225 F.3d 475, 477 (8th Cir. 2001) ("Rule 17(b)(3)(A) permits courts to imbue unincorporated associations and partnerships with the capacity to sue. But this power does not extend to entities that lack legal existence.").

The question of whether an entity has an independent legal existence is resolved by reference to state law.  FED. R. CIV. P. 17(b)(3).  "Under New York law, departments that are merely administrative arms of a municipality do

---

[5] Pagination corresponds to CM/ECF.

not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Rose v. Cnty. of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y., 2012) (citation omitted); *Freund v. Cnty. of Nassau*, 2017 WL 750480, at *2 (E.D.N.Y. Feb. 24, 2017) (citation omitted) (holding that the Nassau County Police Department and Nassau Sheriff's Department are not suable entities).

As the Municipal Defendants correctly point out, the LPD and PPD lack separate legal identities under state law.  Thus, Rule 17(b) precludes them from being named as defendants.  Accordingly, the LPD and PPD must be dismissed as defendant from this action.  However, plaintiff's § 1983 claims against the Towns remain for consideration and will be discussed below.

### B. <u>Section 1983 Claims</u>

Thomas has asserted claims under 42 U.S.C. § 1983 against Officer Gorham and Officer Henry (the "Officers") for false arrest, excessive force, unreasonable search, First Amendment retaliation, and violations of his due process and equal protection rights.  Plaintiff also alleges a § 1983 *Monell* claim for municipal liability against the Towns.

The Municipal Defendants argue that plaintiff's § 1983 claims must be dismissed because the second amended complaint does not allege the requisite "personal involvement" of the Officers.  Defs.' Mem. at 3–5. According to the Municipal Defendants, the Officers were merely acting as

- 11 -

"backup" for the Troopers and were not personally involved in causing any of plaintiff's injuries.  *Id.*

Section 1983 itself is not a source of substantive federal rights, but a statutory mechanism for suing state actors where they are personally involved in deprivations of constitutional rights.  *Whitton v. Williams*, 90 F. Supp. 2d 420, 427 (S.D.N.Y. 2000); *see also Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 489 (N.D.N.Y. 2017).  "To establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (quotation omitted).

State actors are considered "personally involved" for the purpose of § 1983 when they directly participate in, or when they fail to intervene to prevent, a constitutional deprivation.  *See Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016); *see also Martinez v. City of N.Y.*, 564 F. Supp. 3d 88, 106 (E.D.N.Y. 2021) ("Police officers have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.") (cleaned up).

Thomas's § 1983 claims are premised on theories of direct participation and/or a failure to intervene by the Officers.  Thomas brings six claims against the Officers for: (1) false arrest; (2) excessive force; (3) unreasonable search; (4) First Amendment retaliation; (5) Due Process violations; (6) Equal

Protection violations.  SAC ¶ 117.   The Municipal Defendants maintain that the Officers were not personally involved in, nor failed to intervene to prevent, any of the constitutional violations alleged.  Defs.' Mem. at 3–5.

1. **False Arrest**[6]

First, Thomas brings a § 1983 claim for false arrest against the Officers. SAC ¶ 117.

"A § 1983 false arrest claim is grounded in the Fourth Amendment right of an individual to be free from unreasonable seizures."  *LaFever v. Clarke*, 525 F. Supp. 3d 305, 329 (N.D.N.Y. 2021) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  "To establish a claim under § 1983 for false arrest a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged."  *LaFever*, 525 F. Supp. 3d at 329 (citation omitted).

In this context, whether the confinement was "privileged" depends upon the arresting officer had probable cause or is otherwise protected under the

---

[6] Thomas's second amended complaint alleges claims of "false arrest and false imprisonment." SAC ¶ 117.  However, as noted in the prior Memorandum-Decision and Order, Dkt. No. 26 at 11 n.2, false arrest and false imprisonment look and function identically and will simply be styled as "false arrest" for the purpose of consistency.  *See Johnston v. City of Syracuse*, 2021 WL 3930703, at *5 (N.D.N.Y. Sept. 2, 2021) (citing *Bowman v. City of Middletown*, 91 F. Supp. 2d 644, 660 (S.D.N.Y. 2000)).

doctrine of qualified immunity.  *See Simpson v. City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015).

Upon review, Thomas has plausibly alleged that the Officers directly participated in in his arrest.  SAC ¶¶ 73, 96.  According to plaintiff, Officer Gorham held his legs while the Troopers rear-handcuffed him.  *Id.* ¶ 73. While plaintiff does not allege that Officer Henry placed the handcuffs on him, he goes on to state that that Officer Henry assisted the Troopers by picking plaintiff up off the ground—while handcuffed—and taking him outside.  *Id.* ¶ 96.

Further, accepting Thomas's version of events as true for the purpose of this motion to dismiss, plaintiff has successfully pled the absence of probable cause.[7]  Plaintiff alleges that he did not commit a crime in any of the responding officers' presence and that police were only dispatched to perform a welfare check.  SAC ¶ 28.  Insofar as Officer Henry may have perceived Thomas as resisting arrest, resistance to an *unlawful* arrest is not an independent basis for probable cause.  The Second Circuit has made clear that under New York law, there can be no probable cause to arrest based solely on allegations that the plaintiff resisted an unlawful arrest.  *Curry v. City of Syracuse*, 316 F.3d 324 (2d Cir. 2003).  Therefore, plaintiff has

---

[7] The Municipal Defendants do not raise qualified immunity as an affirmative defense of the Officers' conduct.

plausibly alleged that each of the Officers directly participated in his false arrest.

Thomas also successfully pleads a failure to intervene claim.  To succeed on a failure to intervene claim, plaintiff must demonstrate that: (1) the defendant had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the defendant's position would have known that the plaintiff's constitutional rights were being violated; and (3) the defendant did not take reasonable steps to intervene."  *Cornell v. Vill. of Clayton*, --- F. Supp. 3d ----, 2023 WL 5965431, at *8 (N.D.N.Y. Sept. 13, 2023).  "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."  *Id.* (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

Thomas alleges that the Officers were on the scene immediately prior to, and during, his arrest.  *See* SAC ¶¶ 70–73, 82, 95–96.  Plaintiff's allegations, taken as a whole, support the claim that the Officers reasonably should have known that plaintiff's constitutional rights were being violated because he was being arrested without probable cause.  *See supra.*  Finally, plaintiff does not allege that either of the Officers took any reasonable steps to intervene on his behalf, evidenced by plaintiff's incapacitation and subsequent confinement that lasted until he was placed into an ambulance.  *Id.* ¶ 104.

Accordingly, plaintiff has plausibly alleged § 1983 false arrest claims against the Officers.

### 2.  **Excessive Force**

Second, Thomas alleges that the Officers subjected him to excessive force during the course of his arrest.  SAC ¶ 117.

"When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures."  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).  "Determining whether a seizure was 'reasonable' under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotations omitted) (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)).

Measured against this standard at the pre-answer stage, Thomas has plausibly alleged that the Officers' use of force was unreasonable under the Fourth Amendment.  While for the most part, plaintiff's second amended complaint attributes the force he was subjected to during his arrest to the Troopers, plaintiff does allege that the Officers were present on the scene and assisted the Troopers with plaintiff's arrest.  SAC ¶¶ 70–73, 82, 95–96.

In particular, Thomas alleges that Officer Gorham held his legs during the handcuffing process and that Officer Henry helped pick him up and bring him outside.  SAC ¶¶ 73, 96.  Importantly, plaintiff has plausibly alleged that he posed no immediate threat to the Officers' or others' safety that might warrant using any force to subdue him.  *Id.* ¶¶ 46–47.  Therefore, plaintiff has plausibly alleged the Officers used excessive force through their direct participation in the arrest.

Thomas also advances a theory of failure to intervene against the Officers.  SAC ¶ 117.  Construing the factual allegations in the second amended complaint in a light most favorable to Thomas, he plausibly alleges that the Officers had a reasonable opportunity to intervene to prevent plaintiff from being confined with excessive force.  As previously discussed, the Officers were present for plaintiff's arrest.  *Id.* ¶¶ 70–73, 82, 95–96.  Whether Officer Henry or Officer Gorham did or did not have a reasonable opportunity to intervene while plaintiff was being handcuffed, and whether they knew or should have known[8] that the Troopers lacked probable cause to seize the plaintiff, are matters that will be resolved in discovery—which is ongoing.

---

[8]  As discussed, questions of probable cause are not ordinarily properly decided at the pre-answer motion stage.  *See Cornell*, --- F. Supp. 3d ----, 2023 WL 5965431, at *8 holding that questions of timing with respect to a failure to intervene question may not be resolved at the motion to dismiss stage).

Therefore, Thomas has plausibly alleged that the Officers subjected him to excessive force in violation of § 1983.  Accordingly, the Municipal Defendant's motion to dismiss plaintiff's excessive force claims must be denied.

### 3. Unreasonable Search[9]

Third, Thomas alleges that the Officers subjected him to an unreasonable search when they entered his home without a warrant.  SAC ¶ 117.

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980).  "Nevertheless, because the ultimate touchstone of the Fourth Amendment is *reasonableness*, the warrant requirement is subject to certain exceptions."  *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (emphasis added); *see also Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978) ("[W]arrants are generally required to search a person's home or his person unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.").

One such exception to the warrant requirement is the emergency aid exception.  Under the emergency aid exception, "officers may enter a home

---

[9] As noted in the prior Memorandum-Decision and Order, Dkt. No. 26 at 11 n.3, though Thomas has labeled this claim as a claim for "trespass," that claim has also been restyled as a claim for "unreasonable search" in accordance with the constitutional rights secured by the Fourth Amendment.  *See, e.g., Wierzbic v. Howard*, 836 F. App'x 31, 33–36 (2d Cir. 2020) (summary order).

without a warrant to render emergency assistance to an injured occupant or to protect an occupant from *imminent* injury." *Kentucky v. King*, 563 U.S. 452, 460 (2011) (emphasis added); *see also Mincey*, 437 U.S. at 392 ("The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.")

While there may be factual scenarios in which a suicidal individual's potential to cause imminent harm to himself triggers the emergency aid exception, *see Caniglia v. Strom*, 593 U.S. 194, 207 (2021) (Kavanaugh, J. concurring), a review of Thomas's second amended complaint does not reveal that the Officers had any such knowledge that would permit them to form the belief that emergency aid was warranted.  Plaintiff does not allege that he was in imminent danger of self-harm or that he was experiencing life threatening side effects from taking an excess of his anti-psychotic medication that morning.  Thomas has, however, clearly alleged that the Officers entered plaintiff's home without a warrant or his consent.  SAC ¶¶ 41, 72, 82.

Therefore, Thomas has plausibly alleged that the Officers subjected him to an unreasonable search.  Accordingly, the Municipal Defendants' motion with respect to dismiss plaintiff's unreasonable search claim must be denied.

**4. First Amendment Retaliation**

Fourth, Thomas alleges that the Officers retaliated against him for engaging in First Amendment protected speech.  SAC ¶ 117.

The government may not retaliate against an individual for engaging in protected speech under the First Amendment.  *See Nieves v. Bartlett*, 587 U.S. ----, 139 S.Ct. 1715, 1722 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  To prevail on a First Amendment retaliation claim, "plaintiff must establish a causal connection between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'"  *Id.* (citing *Hartman*, 547 U.S. at 259).  Put simply, plaintiff must demonstrate that the government defendant would not have taken the adverse action absent the retaliatory motive.  *Id.* (citing *Hartman*, 547 U.S. at 260.).

Upon review, Thomas has not alleged any causal connection between any of his protected First Amendment speech and the adverse actions taken by the Officers.  Plaintiff does not allege that he spoke to the Officers before adverse actions were taken against him.  *See* SAC ¶¶ 34–41.  Plaintiff's second amended complaint does not allege that the Officers manifested a retaliatory animus towards him or that either officer took adverse actions against him *because of* any retaliatory animus.

As for any possible failure to intervene theory of relief, Thomas's allegations do not plausibly support a claim that Officers failed to intervene to prevent retaliation against plaintiff for engaging in protected speech.

Accordingly, Thomas's First Amendment retaliation claims must be dismissed.

### 5. **Due Process**

Fifth, Thomas alleges that the Municipal Defendants violated his Due Process rights secured by the Fourteenth Amendment.  SAC ¶ 117.

The Due Process Clause of the Fourteenth Amendment provides that "No State shall deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  "The touchstone of due process is protection of the individual against arbitrary action of government whether the fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective[.]"  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) (cleaned up).

 "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process."  *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citation omitted).  "Importantly, the Court has stated that a procedural due process claim is not complete when the deprivation occurs, rather, the claim is complete only when the State fails to provide due process." *Id.* (cleaned up). In cases where the loss of a protected liberty interest is the result of "random, unauthorized act of state employees" rather than established state process,

the claim is complete only when the state fails to provide a "meaningful postdeprivation remedy." *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (2d Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 532–533 (1984)).

Upon review, any procedural due process claim would fail.  Thomas alleges that he was deprived of his freedom when he was arrested and subsequently committed to a psychiatric facility.  Plaintiff does not allege that he was deprived of established state process by the Officers.  Nor does plaintiff allege that random unauthorized acts of the Officers deprived him of his liberty and that he did not receive a meaningful post-deprivation remedy.  In fact, the second amended complaint is silent as to what occurred after plaintiff was transferred to the psychiatric facility.

Accordingly, to the extent that Thomas brings a procedural due process claim, that claim must be dismissed for failure to point to inadequate state process or post-deprivation remedy.  *See Routhier v. Goggins*, 229 F. Supp. 3d 299, 309 (D. Vt. 2017) (dismissing plaintiff's procedural due process claim because the complaint failed to allege availability of post deprivation procedures or whether they were insufficient).

To the extent Thomas's second amended complaint might be understood to raise a *substantive* due process claim, it would also fail.  A substantive due process claim requires plaintiff to (1) identify the constitutional right at stake

and (2) demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Matzell v. Annucci*, 64 F.4th 425, 436 (2d Cir. 2023) (internal quotation omitted) (quoting *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir.), *cert. denied*, 142 S. Ct. 109 (2021)).

Importantly, however, "[t]he Supreme Court has held that where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Heidorf v. Town of Northumberland*, 985 F. Supp. 250, 256 (N.D.N.Y. 1997) (cleaned up).

This is true of the Fourth Amendment. *Graham*, 490 U.S. at 395 ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

Therefore, any substantive due process claims available to Thomas are covered by more specific theories already discussed.  Accordingly, the Municipal Defendants' motion to dismiss plaintiff's Due Process claim must be granted.

## 6. **Equal Protection Violations**

Sixth, Thomas alleges that the Municipal Defendants violated his Equal Protection rights secured by the Fourteenth Amendment.  SAC ¶ 117.

"Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, the Second Circuit has long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 6 (S.D.N.Y.), *aff'd,* 705 F. App'x 50 (2d Cir. 2017) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)) (cleaned up).

There exist two theories for this kind of Equal Protection violation: "selective enforcement" and "class of one" discrimination.  *Bristol v. Town of Camden*, --- F. Supp. 3d ----, 2023 WL 3004104, at *11 (N.D.N.Y. Apr. 19, 2023) (citing *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005)).  However, both selective enforcement and class-of-one claims require the plaintiff to "make a showing of different or unequal treatment." *Bristol*, --- F. Supp. 3d ----, 2023 WL 3004104, at *11.

Upon review, Thomas has not done so.  Nowhere has he alleged that he is a member of an identifiable group, or that he was treated differently from a comparable plaintiff.  Accordingly, his Equal Protection claims must fail.  *See e.g., MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353 (E.D.N.Y.

2010) (finding plaintiff's equal protection claim deficient as a matter of law because plaintiff's complaint "failed to identify any comparators or similarly situated entities at all").

### 7. **Municipal Liability under *Monell***

Thomas also brings § 1983 claims against the Town of Lloyd and Town of Plattekill under *Monell*. SAC ¶¶ 120–24. The Municipal Defendants defend this claim on the ground that plaintiff fails to provide specific factual allegations to support his *Monell* claim. Defs.' Mem at 5–7. The Municipal Defendants point to plaintiff's boiler plate language that "provides no factual details whatsoever nor . . . identify any specific policy, procedure, or custom required to properly state a *Monell* claim." *Id.* at 7.

To bring a claim for municipal liability under *Monell*, Thomas must plausibly allege the existence of an official policy or custom that caused him to be denied a constitutional right. *McDonald v. City of Troy*, 542 F. Supp. 3d 161, 174 (N.D.N.Y. 2021) (citing *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020)). "[T]he Supreme Court has recognized that *Monell* liability may be established through: (1) a policy formally adopted and endorsed by the municipality; (2) actions taken by policymaking officials that caused the particular deprivation alleged; (3) practices by subordinate officials that are not expressly authorized but are so widespread and consistent that policymakers must have been aware of them; or (4) a failure by policymakers

to train or supervise that amounts to deliberate indifference to the rights of those who come into contact with the inadequately trained or supervised municipal employees." *Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 729 (N.D.N.Y. 2020) (internal quotation marks omitted) (citing *Deferio v. City of Syracuse*, 770 F. App'x 585, 589 (2d Cir. 2019) (summary order)).

Upon review, Thomas has not plausibly alleged a *Monell* claim against either municipality.  Although plaintiff identifies all four methods of proving a *Monell* claim, he fails to allege any *facts* that might tend to support any of them.  As Judge Sharpe recently explained, "boilerplate statements that county employees were acting in accord with a municipal policy, with no facts to support those statements, are not sufficient to support a *Monell* claim." *Forrest v. Cnty. of Greene*, --- F. Supp. 3d ----, 2023 WL 3864962, at *4 (N.D.N.Y. June 7, 2023), *reconsideration denied,* 2023 WL 5097970 (N.D.N.Y. Aug. 9, 2023).

Thomas's allegations are wholly conclusory and fail to provide the Court with any specific facts that could give rise to municipal liability under *Monell*.  Accordingly, the Municipal Defendants' motion to dismiss plaintiff's *Monell* claims against the Towns must be granted.

## C. **ADA and Rehabilitation Act Claims**

Thomas also brings claims under the ADA and Rehabilitation Act.  SAC ¶¶ 127–37.  Thomas alleges that he was discriminated against because of his

disabilities and that his disabilities were not accommodated by the Municipal Defendants.  *Id.* ¶¶ 136–37.

The parties agree that Thomas has a "disability" within the meaning of both Acts.  Plaintiff receives partial Social Security Disability because of his bipolar disorder and depression.  *See* 42 U.S.C. § 12102(1); 29 U.S.C. § 705(20)(A).  However, the Municipal Defendants argue that plaintiff has not alleged that the Officers discriminated against him because of his disabilities or that he *made* any request for a reasonable accommodation that was denied or ignored by the Officers.  Defs.' Mem. at 9.

Generally, claims brought under the ADA and the Rehabilitation Act are so similar that they may be analyzed together.  *See Henrietta D.*, 331 F.3d at 272.  "To assert a claim under the ADA or Rehabilitation Act, a plaintiff must establish that (1) they are qualified individuals with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities."  *Butchino v. City of Plattsburgh*, 2022 WL 137721, at *9 (quoting *Henrietta D.*, 331 F.3d at 272–73).  "Additionally, to establish a violation under the Rehabilitation Act, a plaintiff must show that the defendants receive federal funding."  *Henrietta D.*, 331 F.3d at 272.

While there is no individual liability under either Act, vicarious liability does exist for municipalities under the ADA and Rehabilitation Act. *Lalonde v. City of Ogdensburg*, --- F. Supp. 3d ----, 2023 WL 2537626, at *23 (N.D.N.Y. Mar. 16, 2023) (collecting cases); *see also Williams v. First Transit, Inc.*, 2023 WL 7385570, at *3 (D. Conn. Nov. 8, 2023) (collecting cases).

As outlined in the previous Memorandum-Decision and Order issued in this case, interactions between a law enforcement officer and a disabled person qualifies as a service, program, or activity subject to accommodation under the ADA and Rehabilitation Act. Courts have found two factual scenarios that give rise to ADA and Rehabilitation Act liability during an arrest: (1) when police arrest an individual because they misinterpret their disability to be criminal activity; and (2) when the police fail to reasonably accommodate an individual's disability during an arrest. *See Durr v. Slator*, 558 F. Supp. 3d 1, 27–28 (N.D.N.Y. 2021).

The Second Circuit has held that a plaintiff is not required to specifically ask for a reasonable accommodation if his disability is apparent from the circumstances. *Durr*, 558 F. Supp. 3d at 33 (citing *Sage v. City of Winooski*, 2017 WL 1100882, at *4 (D. Vt. Mar. 22, 2017)). In *Sage*, the court reasoned that where the police responded to an apparent trespass by a resident of a local adult-care facility, the police were effectively placed on notice of the suspect's mental disabilities by the nature of his residency. *Sage*, 2017 WL

1100882, at *4 ("Here, the Complaint alleges that Mr. Sage's reference to Allen House should have communicated to the police that they were dealing with a mentally ill person.").

Thomas has plausibly alleged that the Officers were aware—just as the officers in *Sage*—that they were dealing with a mentally ill person.  *Sage*, 2017 WL 1100882, at *4.   Thomas's second amended complaint alleges that the Officers were responding to a call for a welfare check on an adult male suffering from a psychiatric, or "extreme mental health episode."  SAC ¶ 28.

So, while Thomas does not allege that he or anyone else made an explicit request for an accommodation to the Officers that they ignored or refused, that failure alone does not defeat plaintiff's ADA and Rehabilitation Act clams at this early stage of the case.[10]  *See Sage*, 2017 WL 1100882, at *4.  Therefore, plaintiff's ADA and Rehabilitation Act claims against the Municipal Defendants succeed on a theory of vicarious liability of the Towns for the involvement of the Officers.  *See Lalonde*, --- F. Supp. 3d ----, 2023 WL 2537626, at *23.  Accordingly, the Municipal Defendants' motion to dismiss plaintiff's ADA and Rehabilitation Act claims must be denied.

### D. <u>State-Law Tort Claims</u>

---

[10] Thomas's second amended complaint only alleges that both the EMTs and his landlord requested that the Troopers loosen or remove his handcuffs—not the municipal defendants.  SAC ¶¶ 51, 101–02.

Thomas also brings state-law tort claims against the Municipal Defendants. The Municipal Defendants claim that these claims must be dismissed against the Officers as untimely under the applicable statute of limitations. Defs.' Mem. at 9–10. Plaintiff argues that his claims against the Officers "relate back" to his original complaint, which was filed well within the applicable limitations period. Pl.'s Opp'n at 14.

Upon review, Thomas is correct. Rule 15(c)(1)(A) also permits relation back where "the law that provides the applicable statute of limitations allows relation back[.]" FED. R. CIV. P. 15(c)(1)(A). The Second Circuit has been clear that federal courts must look to the "entire *body* of limitations law that provides the applicable statute of limitations." *Hogan*, 738 F.3d 509, 518 (2d Cir. 2013) (emphasis original).

Courts therefore look to New York Civil Practice Law ("CPLR") § 1024, which governs claims brought against John Doe defendants. Section 1024 provides:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. § 1024 (McKinney).

"This provision allows substitution of John Doe defendants for named defendants *nunc pro tunc* where a plaintiff has met two requirements: (1) plaintiff exercised due diligence before the statute of limitations ran to identify the John Doe defendants by name and (2) plaintiff's description of the John Doe defendants fairly apprised the party that he is the intended defendant." *Curkin v. City of N.Y.*, 2020 WL 5628042, at \*9 (S.D.N.Y. Sept. 21, 2020) (cleaned up) (quoting *Hogan*, 738 F.3d at 518–19).  In addition, the new party must be served with process within 120 days of the filing of the amended pleading naming them.  *DaCosta v. City of N.Y.*, 296 F. Supp. 3d 569, 584 (E.D.N.Y. 2017) (citing *Bumpus v. N.Y. City Tr. Auth.*, 883 N.Y.S.2d 99 (N.Y. App. Div. 2009)).

Thomas clearly meets the liberal standard imposed by § 1024.  Plaintiff provided the Municipal Defendants with notice of his claim on October 5, 2021.  Ex. 1 to Decl. of Jeffrey A. Rothman, Dkt. No. 59-1.  On December 21, 2021, Plaintiff sent the Municipal Defendants notice of his lawsuit and a request for waiver of service, in which he requested that defense counsel email plaintiff's counsel the identities of the then-unidentified John Does and Michael Moes so that they could be properly named in an amended pleading and properly served.  Ex. 2 to Decl. of Jeffrey A. Rothman, Dkt. No. 59-2.  Plaintiff therefore exercised his due diligence prior to the end of the

applicable statute of limitations period.[11]  Later, when plaintiff learned the

Officer's identities and amended his pleading, he promptly served the

Officers on June 21, 2023.  Aff. Of Service, Dkt. No. 51.

Therefore, Thomas's second amended complaint adding Officer Gorham

and Officer Henry relates back to his original pleading naming John Does

and Michael Moes.  Accordingly, plaintiff's state-law tort claims brought

against the Officers are timely.

## 1.  **False Arrest and False Imprisonment**

On the merits, Thomas brings a common-law tort claim for false arrest

and false imprisonment.  SAC ¶ 143.

"False arrest is a species of false imprisonment[.]"  *Karen v. State*, 444

N.Y.2d 381 (N.Y. 1981) (citation omitted).  Thomas has plausibly stated a

claim for false arrest against the Officers for the reasons he has successfully

pled a § 1983 claim for false arrest.  *Weyant*, 101 F.3d at 852 ("[A] § 1983

claim for false arrest . . . is substantially the same as a claim for false arrest

---

[11] Ordinarily "[s]ection 50–i [of the General Municipal Law] provides that a plaintiff must commence any action against a county for personal injury within one year and ninety days from the claim's accrual."  *Rose*, 904 F. Supp. 2d at 248 (citing *Campbell v. City of N.Y.*, 825 N.E.2d 121, 122 (N.Y. 2005)).  However, during the COVID-19 Pandemic, the then-acting Governor of the State of New York issued Executive Orders 202.8 and 202.72 thereby tolling the statute of limitations until November 3, 2020.  Exec. Order No. 202.8 (Mar. 20, 2020); Exec. Order No. 202.72 (Nov. 3, 2020).  Accordingly, the statute of limitations began to run on November 3, 2020, and ended on February 1, 2022.

under New York law[.]").  Accordingly, the Municipal Defendants' motion to dismiss plaintiff's false arrest and false imprisonment claims must be denied.

### 2.  **Assault and Battery**

Second, Thomas brings common-law assault and battery claims against the Officers for their participation in his arrest.  SAC ¶ 146.

The elements of New York assault and battery and § 1983 excessive force claims are "substantially identical."  *Tardif v. City of N.Y.*, 991 F.3d 394, 410 (2d Cir. 2021) (quoting *Posr. V. Doherty*, 944 F.3d 91, 94–95 (2d Cir. 1991).  Further, civil battery under New York law merely requires "an intentional wrongful physical contact with another person without consent."  *Tardiff*, 991 F.3d 410 (quoting *Charkhy v. Altman*, 678 N.Y.S.2d 40, 41 (N.Y. App. Div. 1998)).

Therefore, for the same reason that Thomas's excessive force claims under § 1983 survive, so do his assault and battery claims.  Accordingly, the Municipal Defendant's motion to dismiss plaintiff's assault and battery claims must be denied.

### 3.  **Trespass**

Third, Thomas alleges that the Officers committed trespass when they entered his home without a warrant.  SAC ¶ 149.

"The requisite elements for a claim of trespass are (1) the intentional entry by defendants on to plaintiffs' land and (2) the wrongful uses without

justification or consent." *SUEZ Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*, 578 F. Supp. 3d 511, 555 (S.D.N.Y. 2022) (citation omitted).

Plaintiff acknowledges that the Officers were dispatched to his home to complete a welfare check. SAC ¶ 28. Ordinarily, "law-enforcement officials have a privilege to enter private property to perform their legal duties." *Frederique v. Cnty. of Nassau*, 168 F. Supp. 3d 455, 489 (E.D.N.Y. 2016). But the scope of that privilege is still constrained by the Fourth Amendment. *See Kaplan v. Cnty. of Orange*, 528 F. Supp. 3d 141, 172 (collecting cases).

Therefore, Thomas's trespass claim survives for the same reasons Thomas's unreasonable search claim does. Accordingly, the Municipal Defendant's motion to dismiss plaintiff's trespass claim must be denied.

### 4. **Vicarious Liability**

Finally, Thomas brings a claim of *respondeat superior* liability against the Towns for the alleged state-law violations of the Officers. SAC ¶ 140.

"Under the common-law doctrine of *respondeat superior*, an employer—including the State—may be held vicariously liable for torts, including intentional torts, committed by employees acting within the scope of their employment[.]" *Rivera v. State*, 34 N.Y.3d 383, 389 (N.Y. 2019); *see also De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 416 (S.D.N.Y. 2015).

Because this inquiry is fact-based, it is better suited for resolution after discovery. *Rivera*, 34 N.Y.3d 390. However, accepting all the factual

allegations in Thomas's second amended complaint as true, it is plausible that the alleged state-law violations committed by the Officers were made in the scope of their employment and in the furtherance of the Towns' interests. Accordingly, the Municipal Defendants' motion to dismiss plaintiff's *respondeat superior* claims against the Towns must be denied.

## V. **CONCLUSION**

In sum, Thomas has plausibly alleged § 1983 claims against the Officers for (1) false arrest; (2) excessive force; and (3) unreasonable search. Plaintiff has also plausibly alleged state-law claims against the Officers for (1) false arrest and false imprisonment; (2) assault and battery; and (3) trespass. However, plaintiff has failed to plausibly allege § 1983 claims for First Amendment retaliation, Due Process violations, or Equal Protection violations.[12]

As for the Towns, Thomas has failed to state a plausible § 1983 claim for municipal liability. Plaintiff has plausibly alleged that one or both of the Towns may be liable for alleged violations of the ADA and Rehabilitation Act when the Officers failed to provide plaintiff with a reasonable accommodation for his disabilities. Plaintiff has also plausibly alleged a theory of *respondeat*

---

[12] The State Defendants have not yet moved to dismiss Thomas's second amended complaint. However, plaintiff may wish to discontinue his First Amendment Retaliation, Due Process, and Equal Protection claims against the State Defendants for the same reasons that he fails to plausibly allege these claims against the Municipal Defendants.

*superior*, or vicarious liability, against the Towns for the state-law claims against the Officers.

Therefore, it is

ORDERED that

1.  The Municipal Defendants' motion to dismiss is GRANTED in part and DENIED in part;

2.  The Municipal Defendants' motion to dismiss plaintiff's § 1983 claims for false arrest, excessive force, and unreasonable search is DENIED;

3.  The Municipal Defendants' motion to dismiss plaintiff's § 1983 claims for First Amendment retaliation, due process violations, and equal protection violations is GRANTED;

4.  The Municipal Defendants' motion to dismiss plaintiff's § 1983 claims for municipal liability is GRANTED;

5.  The Municipal Defendants' motion to dismiss plaintiff's ADA and Rehabilitation Act claims is DENIED;

6.  The Municipal Defendants' motion to dismiss plaintiff's state-law claims for false arrest and imprisonment, assault and battery, and trespass is DENIED;

7.  The Municipal Defendants' motion to dismiss plaintiff's state-law claim for *respondeat superior* against the Towns is DENIED.

8. The Municipal Defendants are ordered to file an ANSWER to plaintiff's remaining claims on or before January 30, 2024**.**

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  January 11, 2024
       Utica, New York.